AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Utah

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
OCT 1 5 2018
BY D. MARK JONES, CLERK
_____
DEPUTY CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.  2:18mj594-DBP
SEE ATTACHMENT A )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT A

located in the ___CENTRAL___ District of ___UTAH___ , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC SEC. 922(g)(1) | FELON IN POSSESSION OF A FIREARM |
| 18 USC SEC. 2119 | CARJACKING |
| 18 USC SEC. 924(c) | USE, CARRY, BRANDISH FIREARM IN FURTHERANCE OF CRIME OF VIOL. |

The application is based on these facts:

SEE AFFIDAVIT ATTACHED HERETO, AND INCORPORATED BY REFERENCE HEREIN:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mario Aguilera, ATF Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/15/18

City and state: Salt Lake City, UT

Hon. Dustin B. Pead, US Magistrate Judge
*Judge's signature*
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF LG CELLULAR PHONE, SERIAL #712CYQX851188; TRACFONE CELLUAR PHONE IMEI: 354349080272563; LG CELLULAR PHONE SERIAL NUMBER: 801CYFT3315587, CURRENTLY LOCATED AT 3600 CONSTITUTIONAL BLVD, WEST VALLEY CITY, UTAH. | Case No. _____ |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Mario Aguilera**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of electronic devices that are currently in law enforcement possession, and the extraction from those electronic devices of electronically stored information described in Attachment B.

2.      I am currently a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms and Explosives, United States Department of Justice.  I have been employed with the West Valley City Police Department for over seven years. I was assigned to the patrol Division, dealing with narcotics, gang, domestic violence, violent crimes, accidents and property investigations.  I was assigned as a detective for the Vice Narcotics Unit for the West Valley City Police Department, dealing with short term and long term distribution of illegal narcotics and I have made numerous arrests for related offenses. I have participated in planning and executing numerous search warrants that have resulted in the seizure of illegal drugs, firearms, and stolen property as well as evidence of other criminal violations.  I have received a certification from the Utah Peace Officer Standards and Training. I have specialized training from various professional

1

associations such as; Crisis Intervention program through Valley Mental Health, Crisis Negotiator Academy through the Public Agency Training Council (PATC), Advanced Roadside Impaired Driving Enforcement (ARIDE) training course, I have received 24 hours of Explosives Awareness Training that was sponsored by the United Stated Federal Bureau of Investigations (FBI), Search warrant writing course instructed by the Salt Lake County District Attorney's Office, Basic Drug Investigator School that was sponsored by the United States Department of Justice, Drug Enforcement Agency and Rocky Mountain High Intensity Trafficking Area (RMHIDTA), which included; forty (40) hours of training on basic skills and information necessary to initiate, pursue and successfully conclude drug investigations, Utah Narcotics Officers Association (UNOA) on illegal narcotics and illegal narcotic trends. I was assigned to the Drug Enforcement Agency (DEA) for several months as part of a long-term intensive narcotics detective training program, I have attended classes on Drug/Narcotics Investigation: Legal Issues & Best Practices that was sponsored by (PATC). As a result of my training and experience, I have become familiar with the methods used by drug traffickers, including but not limited to, packaging, transportation, distribution/sales, efforts used to detect the presence of law enforcement and communication methods such as the use of coded speech during telephone conversations.

3.   I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have participated in the investigation of the offenses set forth below. As a result of my personal participation in this investigation, and analyses of reports submitted by other officers, I am familiar with all core aspects of this investigation.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

4.   The devices to be examined are as follows:

   a.   an LG cellular telephone (black), model; LG-TP260, FCC ID: ZNFTP260, serial number: 712CYQX851188, IMEO: 355265-08-851188-6 (TT#1);

2

  b. a TracFone wireless Inc cellular telephone (black), Model A577VL, FCC ID: 2ACCJB076, IMEI: 354349080272563 (TT#2);

  c. an LG cellular telephone (white), model: LS676, FCC ID: ZNFLS676, Serial Number: 801CYFT3315587 (TT#3) (collectively the "Target Telephones).

5.  The applied-for warrant would authorize the forensic examination of the Target Telephones for the purpose of identifying electronically stored data particularly described in Attachment B.

6.  This affidavit is intended to show only that there sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.

7.  As set forth below, I submit that there is probable cause to believe that within the data inside the Devices there exists evidence of violations of 18 U.S.C § 922(g)(1), Felon in Possession of a Firearm and Ammunition, 21 U.S.C § 844(a), Possession of Methamphetamine, and 18 U.S.C § 2119, Carjacking, and 18 U.S.C § 924(c), Using, Carrying and Brandishing a Firearm During and in Relation to a crime of Violence.

## FACTS TO ESTABLISH PROBABLE CAUSE

8.  On May 16th, 2018, West Valley City Police Department received a 911 call from complainant Tena Nichols. Tena reported a carjacking in progress at 1380 W. Crystal Ave; 2590 S. Nichols told dispatch that the suspect had a handgun. Nichols described one of the suspects and stated that they left going eastbound on Crystal Ave. Nichols described her vehicle as a Chevy, HHR, Utah license plate (Z336FV).

9.  Nichols told police that a male came over to her house in a black vehicle and asked for Amanda, which was her daughter Amanda Smith. Nichols told the male that Amanda wasn't home. The male claimed the he knew Amanda was home. Nichols told the male that she would have Amanda call him. Nichols went into the house. Nichols saw through the window that a female got out of the black car

3

and started walking towards her carport. Nichols walked outside and told the female to leave, Smith followed her outside.

10. Smith stated that when she walked outside, she saw the male looking into the car. Smith recognized the male. Smith stated that she gave the male a ride home the night before. The male approached Smith and asked her where his cousin's gold ring was. Smith told the male it was probably in the vehicle and that she would look for it. Smith had the car keys in her hand and told the male to stay away from the car. Smith said that the male reached over with his hand and grabbed the keys from her. She tried to resist him. Smith said the male pulled a gun from his waistband and showed it to her. Smith stated that the male then got into her vehicle (the Chevy HHR) and left. Smith said the female got back into the black vehicle and followed the Chevy HHR. Smith told officers that the male had mentioned somebody being down the street. Smith believed there was another vehicle waiting for the male up the street.

11. Smith told officers that she had met the male through a friend by the name "Deli", a person that she has hung out with a few times. Smith said she received a phone call today from the male that she had dropped off night before with "Deli". The male asked Smith for a ride, Smith didn't have a good feeling about it and told him that she wasn't able to. Smith stated that she didn't know how the male got her number or how he knew where she was.

12. Smith told officers that her vehicle had "On Star." Smith then contacted On-Star and was told her vehicle was at 382 E. Mansfield Ave in South Salt Lake City. The South Salt Lake City Police Department responded to the area. A South Salt Lake Police officer located the vehicle with a few males rummaging through the car. When the males observed the police officers, they dumped several items on the street and attempted to flee on foot. The males were taken into custody. Officers thereafter located several items, including a Glock model 27, 40 S&W, and Taurus model PT738, 380 ACP firearm.

13. Officer Siripathane with the West Valley City Police Department took Nichols to the location where the vehicle was recovered (to pick up the vehicle). Nichols there identified one of the males in custody as the suspect who had the gun. The male Nichols identified is **Mitchell MIKOLS, Date of Birth 7/05/1985**. Officer C. Taylor with the South Salt Lake Police Department, located a pink lanyard in

4

MIKOLS pocket with a key that had a Chevy symbol. He also located two cell phones in his front pocket, TT#1 and TT#2. Officer C. Tayler also located a firearm near where MIKOLS went down to the ground. Detective J. Bailey with West Valley City Police Department, took custody of the items from MIKOLS and booked them into the West Valley City evidence storage on May 16th, 2018.

14.   Detective Pittman interviewed one of the suspects detained by SSLPD. The male was identified as **Casey ROBINSON, Date of Birth 8/14/1983**. ROBINSON stated they "went to get my shit back" and "it wasn't supposed to be like this." Robinson stated he was the "wheel man," meaning he was the ride for Mitchell when they went to 1380 W. Crystal Ave. ROBINSON said he gave MIKOLS a gun when they got to the address. ROBINSON told Detective Pittman that he gave MIKOLS a Glock.

15.   Detective O'Neill with the West Valley City Police Department, also spoke with ROBINSON. ROBINSON didn't want to speak about the firearms because he knew he was a felon. ROBINSON said he dropped off his cousin (MIKOLS), at a house in West Valley City. He said MIKOLS was speaking with a women, and there was a commotion between them. ROBINSON told Detective O'Neill that he was driving a black Mercedes-Benz that was located near the Chevy HHR.

16.   Detective O'Neill spoke with a female that had been detained, identified as Erica Mackay Date of Birth 10/02/1984. She claimed she was MIKOLS' girlfriend. Mackay stated that she was there when the vehicle was taken. Mackay stated that both firearms belong to ROBINSON and ROBINSON gave the Taurus to MIKOLS while they were in West Valley City. Mackay stated that ROBINSON was driving her black Hyundai Sonata, and that MIKOLS followed ROBINSON to the residence in West Valley City. Mackay said the incident occurred because ROBINSON wanted to "tax" Amanda and also because Amanda had some rings that belonged to ROBINSON. Mackay stated that when ROBINSON gave MIKOLS the firearm, he put it down his waistband.

17.   Detective O'Neill interviewed MIKOLS. MIKOLS denied taking the vehicle. He stated that Casey was meeting a girl to get some stuff back and he wasn't sure what was going on.

18. On May 17th, 2018, Detective J. Bailey authored a search warrant for the Mercedes-Benz E500, bearing identification number WDBUF83J75X168315. The Honorable Judge Venice S. Trease approved the search warrant for the vehicle. Detectives searched the vehicle and located the following items; TT#3, multiple shaved keys located in the trunk, scales/drug paraphernalia located in the front of the vehicle, lock picks located under the driver front seat, magazine pouch and holster located on the driver seat. Detective Pittman was assigned as the evidence custodian. He booked the items into the West Valley City evidence storage.

19. Based upon the interviews conducted by Detectives, ROBINSON and MIKOLS had planned to commit an act of violence with firearms. With my training, experience, and participation in other investigations involving crimes of violence, your affiant knows the following facts related to crimes listed on this affidavit:

  a. Your affiant knows from experience that suspects often use cellular telephones and electronic messaging application to communicate criminal activity.

  b. Your affiant knows that cellular telephones may have been used to coordinate the plan to commit an act of violence, using firearms. The cellular telephones also often contain electronically stored lists of associates, many of whom are co-conspirators. Furthermore, cellular telephones contain an electronic record of its own telephone number. Sometimes access to the electronic contents of a cellular telephone is the only means of determining the telephone number assigned to a particular telephone possessed by the suspects. All of the foregoing electronic information is useful for identifying and providing evidence against suspect and their co-conspirators.

  c. I know from training and experience, and as detailed in this affidavit, that those persons involved in crimes of violence using, carrying and brandishing firearms will go to great lengths to conceal, hinder, or thwart law enforcement discovery of their criminal operation or locations associated with their crimes.

6

20. The Devices are currently in the lawful possession of the West Valley City Police Department (WVCPD). It came into the WVCPD's possession in the following way: WVCPD responded to a carjacking, the suspects were located by SSLPD. The officers with SSLPD arrested the suspects and took the items of evidentiary value that were possessed by the suspects. The items of evidentiary value were turned over to WVCPD. Therefore, while the WVCPD might already have all the necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Devices will comply with the Fourth Amendment and other applicable laws.

21. The Devices are currently in the evidence storage at 3600 Constitutional BLVD, West Valley City, UT 84119. In my training and experience, I know that the Devices have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the West Valley City Police Department.

## **TECHNICAL TERMS**

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. The "Device" or "Devices" (Wireless telephone): A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address

books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos. The "Devices" indicated in this affidavit contain digital cameras.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that

8

      antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

   d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

   e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

   f. Messaging: The ability to communicate through additional mediums outside of the regular cellular service to include SMS text, MMS, email, application platforms such as but not limited to WhatsApp, Facebook, Dingtone, Google Voice, Viber, etc.

23. Based on my training, experience, research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.phonescoop.com, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, internet computer, and GPS navigation device. Additionally, in my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a

10

computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//

//

//

//

//

//

//

## CONCLUSION

28. I submit that this affidavit supports probable cause for a search warrant authorizing the forensic examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Mario Aguilera
Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and Sworn Before me this ___ day of October 2018

HONORABLE DUSTIN B. PEAD
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

## THE DEVICES TO BE SEARCHED

1. The property to be searched are; LG cellular telephone (black), model; LG-TP260, FCC ID: ZNFTP260, serial number: 712CYQX851188, IMEO 355265-08-851188-6 (TT#1). TracFone wireless Inc cellular telephone (black), Model A577VL, FCC ID: 2ACCJB076, IMEI: 354349080272563 (TT#2). LG cellular telephone (white), model: LS676, FCC ID: ZNFLS676, Serial Number: 801CYFT3315587 (TT#3) (collectively the "Target Telephones"). The Target Telephones are currently located at 3600 Constitutional BLVD, West Valley City, Utah 84119, as secured evidence.

This warrant authorizes the forensic examination of the Target Telephones for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

## THE INFORMATION TO BE SEIZED

1.  All records on the Target Telephones described in Attachment A that relate to violations of 18 U.S.C § 922(g)(1), Felon in Possession of a firearm and ammunition, 18 U.S.C § 924(c), Using, Carrying and Brandishing a Firearm During and in Relation to a Crime of Violence, and 18 U.S.C § 2119, Carjacking, and 21 U.S.C § 844(a) Possession of Methamphetamine, including:

   a. lists of contacts and related identifying information;

   b. all recordings both audio and visual indicating possession, storage, or trafficking of firearms and/or narcotics (to include exif data associated with visual recordings which can provide evidentiary dates and locations associated with the recordings);

   c. all communications to include but not limited to text or media messages, instant messaging, or messaging applications utilizing the Internet.

2.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.  Records evidencing the use of the Internet including:

   a. records of Internet Protocol addresses used;

   b. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

4.     Any other fruits or instrumentalities of the crimes mentioned in paragraph 1.

5.     As the indicated devices can contain removable storage mediums such flash memory or Subscriber Identity Modules, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data).